UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JESSI A. WALKER-TREW,

    Plaintiff,

v.                                     Case No.:  6:20-cv-1410-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff Jessi A. Walker-Trew seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. As explained below, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A. Social Security Eligibility

For individuals who were eligible for supplemental security income benefits as children, the Social Security Act and regulations require that once the child reaches the age of 18 years, the Social Security Administration ("SSA") will redetermine her eligibility. 42 U.S.C. § 1382c; 20 C.F.R. § 416.987. SSA uses the rules for adults (individuals older than 18) who file new applications as explained in 20 C.F.R. § 416.920(c) – (h). 20 C.F.R. § 416.987(b).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as

adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. Normally, at the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). In redetermination

proceedings, this step is not used for redetermining disability at age 18. 20 C.F.R. § 416.987(b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

**C.     Procedural History**

Plaintiff received supplemental security income benefits as a child based on an application filed on September 9, 2013. (Tr. 20, 57). Plaintiff attained the age of 18 in February 2017, and was found no longer disabled as of May 3, 2017, based on a redetermination of disability under the rules for adults who file new applications. (Tr. 22). Plaintiff requested a hearing and on July 8, 2019, a hearing was held before Administrative Law Judge ("ALJ") Janet Mahon. (Tr. 37-56). On August 19, 2019, the ALJ entered a decision finding Plaintiff's disability ended on May 3, 2017, and she had not become disabled again since that date. (Tr. 20-31).

Plaintiff requested review of the hearing decision, but the Appeals Council denied Plaintiff's request on June 8, 2020. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on August 7, 2020, and the case is ripe for review.

The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 23).

## D. Summary of ALJ's Decision

Plaintiff attained the age of 18 in February 2017, and was notified she was no longer eligible for supplemental security income benefits. (Tr. 22). She was notified that she was found no longer disabled as of May 3, 2017. (Tr. 22). At step two, the ALJ found that Plaintiff had the following severe impairment: "depressive disorder; bipolar disorder; anxiety disorder; and attention-deficit/hyperactivity disorder (ADHD)." (Tr. 22). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (Tr. 22).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that since May 3, 2017, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform simple tasks, and have occasional interaction with public, coworkers, and supervisors.

(Tr. 25).

At step four, the ALJ found Plaintiff had no past relevant work. (Tr. 30). At step five, the ALJ relied on the testimony of a vocational expert to find that

considering Plaintiff's age (20 on the hearing date), education (at least a high school), no work experience, and RFC, there are jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 30, 41). Specifically, the ALJ found that Plaintiff could perform such occupations as:

(1) laundry labeler, DOT 361.687-018, medium, unskilled, SVP 2

(2) hand packager, DOT 920.587-018, medium, unskilled SVP 2

(3) photocopy machine operator, DOT 207.685-014, medium, unskilled, SVP 2

(Tr. 31). The ALJ concluded that Plaintiff's disability ended on May 3, 2017, and the claimant had not become disabled again since that date. (Tr. 31).

## II. Analysis

On appeal, Plaintiff raises two issues: (1) whether the ALJ properly weighed the medical opinions of record based on an adequate rationale and substantial evidence when determining Plaintiff's residual functional capacity; and (2) whether the Appeals Council properly rejected the additional evidence submitted to it. (Doc. 33, p. 26, 44).

**A. Whether the ALJ properly weighed the medical opinions of record based on an adequate rationale and substantial evidence when determining Plaintiff's residual functional capacity**

Plaintiff argues the ALJ erred: (1) in failing to discuss the opinions of Steven Cotton, Ph.D.; (2) in discounting medical evidence by finding Plaintiff's medical

records showed mostly unremarkable mental status examinations; (3) in affording great weight to the non-examining State Agency psychologists; and (4) in finding Plaintiff's activities of daily living contradicted Plaintiff's physician's opinions. (Doc. 33, p. 26-34). The Commissioner argues substantial evidence supports the ALJ's decision regarding the weight afforded the medical sources. (Doc. 33, p. 34-44).

At step four, an ALJ must properly consider treating, examining, and non-examining physician's opinions and weigh these opinions and findings as an integral part of the ALJ's RFC determination. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012). Whenever a physician offers an opinion concerning the nature and severity of a claimant's impairments—including the claimant's symptoms, diagnosis, and prognosis; physical and mental restrictions; or what the claimant can still do—the ALJ must state with particularity the weight given to the opinion and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such an explanation, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart*, 662 F.2d at 735).

Non-examining doctors' opinions do not constitute substantial evidence on which to base an administrative decision and are entitled to little weight when they

contradict the opinions and findings of treating or examining physicians. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988); *Kahle v. Comm'r of Soc. Sec.*, 845 F. Supp. 2d 1262, 1272 (M.D. Fla. 2012); 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.").

Plaintiff argues the ALJ erred in failing to discuss the August 2018 and April 2019 opinions of psychologist, Dr. Cotton. (Doc. 33, p. 31). Plaintiff asserts that Dr. Cotton treated Plaintiff in conjunction with psychiatrist, Lilia Nikolayev, M.D. (Doc. 33, p. 31). As Plaintiff claims, Dr. Cotton completed a Medical Opinion Re: Ability to Do Work-Related Activities (Mental) on August 6, 2018. (Tr. 637-639). According to the form, Plaintiff argues that she much more limited in her ability to work than reflected in the RFC. (Doc. 33, p. 32).

The Commissioner argues that there is no basis to remand due to the ALJ failing to assign weight to Dr. Cotton's 2018 and 2019 opinions. (Doc. 33, p. 38). The Commissioner contends that Dr. Cotton saw Plaintiff at most twice before completing the 2018 report. (Doc. 33, p. 38). Thus, Dr. Cotton's status as a treating physician at that time is in question. (Doc. 33, p. 38). The Commissioner also argues that because the report only covered from July through August 2018, this form does not undermine the ALJ's decision because it did not show a disability for any consecutive twelve-month period. (Doc. 33, p. 39). The Commissioner also contends

that failure to discuss the form is at most harmless error because it is unsupported by the minimal treatment notes from Dr. Cotton at the time he opined these restrictions. (Doc. 33, p. 39).

Dr. Cotton treated Plaintiff from July 9, 2018 through April 2019. (Tr. 632-36; 651-65). While the Court recognizes that Dr. Cotton's handwritten records are difficult to read, it appears that the ALJ did not consider these records in the decision. The Court finds no reference in the decision to Dr. Cotton or to the exhibits with his medical records and report. (Tr. 22-29). While true that Dr. Cotton may have only examined Plaintiff a few times before completing his medical opinion as to her ability to do work-related activities, Dr. Cotton did treat Plaintiff after that opinion.

In the medical opinion form, Dr. Cotton found Plaintiff unable to meet competitive standards in most of the categories regarding her aptitude to do unskilled work. (Tr. 637). He also found Plaintiff seriously limited in the remaining categories such as carrying out very short and simple instructions. (Tr. 637). He explained that Plaintiff is "overemotional and overreactive. Even minor stressors lead to tearfulness, physical reactions i.e. vomiting with poor concentrations, impaired memory, and poor decision making." (Tr. 637). He also found that Plaintiff was unable to meet competitive standards in all categories in aptitudes needed to do semiskilled and skilled work. (Tr. 638). He explained that Plaintiff has limited cognitive ability and is highly emotional. (Tr. 638). He further found Plaintiff unable

to meet competitive standards, seriously limited, or had no useful ability to function in the categories needed to do particular types of jobs, including interacting appropriately with the general public, and maintaining socially appropriate behavior. (Tr. 638). He explained that any demand on Plaintiff is stressful and she has a strong emotional reaction and could be sent home. (Tr. 638). He found Plaintiff is unable to work or maintain employment due to a history of psychiatric disorders with two admissions to a psychiatric hospital. (Tr. 638). He also found she would be absent from work more than four days per month due to her impairments or treatment. (Tr. 638). Later in April 2019, Dr. Cotton found Plaintiff unable to manage any employment due to severity of her cognitive and mental disorder. (Tr. 654).

The ALJ failed not only to weigh but also discuss Dr. Cotton's medical records and his opinion. Dr. Cotton's opinion finds Plaintiff to be much more limited than reflected in the RFC. Even if the portion of Dr. Cotton's opinion finding Plaintiff unable to work is a matter reserved to the ALJ,[1] without the ALJ considering and weighing Dr. Cotton's treatment notes and opinions, the Court cannot properly review the decision and is unable to determine whether substantial evidence supports the decision. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011).

---

[1] *See Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (finding that the RFC determination and ability to work is within the province of the ALJ, not of doctors)

Plaintiff also argues that the ALJ improperly relied on "mostly unremarkable mental status examinations of record" to support her consideration of the medical opinions. (Doc. 33, p. 27-29). ("Similarly, on January 21, 2018, May 10, 2018, December 19, 2018, April 3, 2019, different examiners repeatedly noted that the claimant has displayed normal mental status. For instance, the examiners observed that the claimant's memory and concentration were intact, she had average intelligence, thought processes were logical, thought content was normal, her speech was normal, insight and judgment were fair to good, and her perception was normal."). "[T]o discount a treating physician's opinion because it is 'inconsistent with [the source's] own medical records,' an ALJ must identify a genuine 'inconsisten[cy].'" *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1262-63 (11th Cir. 2019) (quoting *Lewis v. Callah*an, 125 F.3d 1436, 1440 (11th Cir. 1997)). It is not enough to simply cite positive or neutral observations that "create, at most, a trivial and indirect tension with the treating physician's opinion by proving no more than that the claimant's impairments are not all-encompassing." *Id.* at 1263. While the ALJ is correct that many of Plaintiff's evaluations had positive or neutral aspects in the safe environment of a doctor's office, Dr. Cotton determined that these same attributes would not continue when Plaintiff was faced with the stressors and environment of full-time work. (Tr. 635-37). Although the opinion only covered one month in time, it provided direct insight into Plaintiff's ability to work. Thus, on

remand, when considering Dr. Cotton's medical records and opinions, the Commissioner must determine whether a real inconsistency exists between the medical source's treatment notes and opinions. *See id.*

Likewise, Plaintiff argues that the ALJ improperly supported the decision based on Plaintiff engaging in a full range of daily activities. (Doc. 33, p. 30-31). These activities include independently preparing simple meals, shopping on a computer, doing laundry, going out alone, driving a car, buying clothes, counting change, and attending college. (Tr. 23, 24, 26, 27). Based on these daily activities the ALJ concluded that Plaintiff "can adapt and manage herself in a work environment." (Tr. 29). But these activities, including attending two classes at college, can be structured to avoid triggers for anxiety and panic attacks and avoid times when Plaintiff's mental impairments would not allow her to participate in these activities. For example, Plaintiff testified to the accommodations she received in college, such as being able to leave a class whenever she needs. (Tr. 43). It is unclear whether the ALJ considered that a work environment will not allow Plaintiff this same flexibility. *See Schink*, 935 F.3d at 1263-64.

Based on the record as a whole and the lack of consideration of Dr. Cotton's records and opinions, the Court finds remand warranted.

**B.     Whether the Appeals Council properly rejected the additional evidence submitted to it**

After the ALJ's August 2019 decision, Dr. Cotton completed an updated November 13, 2019 Medical Opinion Re: Ability To Do Work-Related Activities (Mental). (Tr. 8-10). The opinion covered the time between August 8, 2018 through the date of the opinion. (Tr. 8-10). Plaintiff submitted this opinion to the Appeals Council for consideration. (Tr. 1). The Appeals Council acknowledged this additional evidence, but determined that "this evidence does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2). Plaintiff argues that the Appeals Council erred in rejecting this new evidence. (Doc. 33, p. 45). The Commissioner contends that Dr. Cotton had not seen Plaintiff since April 3, 2019, and completed this form seven months later. (Doc. 33, p. 45-46). The Commissioner argues that the Appeals Council reasonably found this evidence did not show a reasonable possibility that it would change the outcome of the decision. (Doc. 33, p. 46).

"'With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process,' including before the Appeals Council." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram v. Comm'r of Soc., Sec. Admin.*, 496 F.3d 1253, 1261 (11th

Cir.2007)). Under new regulations effective in 2017,[2] the Appeals Council will review a case when it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5); 20 C.F.R. § 416.1470(a)(5). New evidence is chronologically relevant if it relates to the period on or before the date of the ALJ's decision. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018). The new regulation added an additional requirement that the Appeals Council "will only consider additional evidence under paragraph (a)(5) of this section if you show good cause for not informing us about or submitting the evidence as described in § 416.1435…." 20 C.F.R. § 404.970(b); 20 C.F.R. § 416.1470(b).

The Appeals Council need not give a detailed explanation or further address each piece of new evidence individually. *Hargress*, 883 F.3d at 1309 (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014)). If the ALJ's decision is contrary to the weight of the evidence – including the new evidence – then the Appeals Council must grant the petition for review. *Id.*

---

[2] In 2016, 20 C.F.R. § 416.1470(a)(5) was amended, effective January 17, 2017, but with compliance not required until May 1, 2017. *See* 81 Fed. Reg. 90987, 90996 (Dec. 16, 2016). So the regulations went into effect before Plaintiff submitted the additional evidence and before the Appeals Council issued its decision.

Dr. Cotton's November 2019 opinion is new because it did not exist prior to the ALJ's decision. The Court need not reach whether this additional evidence would probably change the result because the Court is remanding this action for further consideration of Dr. Cotton's treatment records and opinions. Thus, on remand, the Court directs the Commissioner to consider this later opinion as well.

### III.  Conclusion

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to consider the treatment records and opinions of Dr. Cotton in conjunction with the medical and other evidence of record. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and thereafter close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on December 13, 2021.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties